Filed 6/24/25  P. v. Moore CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>STAVON PORTASHAY MOORE,<br><br>    Defendant and Appellant. | A169660<br><br>(Alameda County<br>Super. Ct. No. 22CR003736A) |

Defendant Stavon Portashay Moore appeals a final judgment following his trial for murder, attempted murder, and possession of a firearm and ammunition as a convicted felon.  The jury acquitted him of murder and attempted murder but found him guilty of possession of a firearm and ammunition as a convicted felon.  Moore admitted five circumstances in aggravation and admitted that he had suffered three prior convictions, including a prior strike conviction.  The trial court sentenced him to the upper term of six years in state prison.  On appeal, Moore argues that his counsel provided ineffective assistance at sentencing by failing to present

mitigating evidence of his childhood trauma pursuant to Penal Code section 1170, subdivision (b)(6).[1]  We find no prejudice and affirm.

## I.  BACKGROUND

A.  Procedural History

A felony information charged Moore with:  (1) murder (§ 187, subd. (a); count 1); (2) attempted murder (§§ 187, subd. (a), 664; count 2); (3) possession of a firearm by a convicted felon (§ 29900; count 3); and (4) possession of ammunition by a convicted felon (§ 30305, subd. (a)(1); count 4).  The information also alleged various aggravating factors under California Rules of Court, rule 4.421[2] and that Moore had suffered three prior convictions, including one strike conviction.  (§§ 1170.12, subd. (c)(1); 667, subd. (e)(1).)

Following trial, the jury acquitted Moore of murder and attempted murder, as well as the lesser included offenses of voluntary and involuntary manslaughter, attempted voluntary and involuntary manslaughter, and assault with a deadly weapon.  The jury, however, found Moore guilty of possession of a firearm and possession of ammunition by a convicted felon (counts 3 and 4).

Moore admitted to five circumstances in aggravation that the trial court found true:  (1) he was armed with or used a weapon during the crime (rule 4.421(a)(2)); (2) his prior convictions were numerous and increasing in seriousness (rule 4.421(b)(2)); (3) he served a prior prison term (rule 4.421(b)(3)); (4) he was on parole when the crime was committed

---

[1]     All further statutory references are to the Penal Code unless otherwise specified.

[2]     Further references to rules are to the California Rules of Court.

2

(rule 4.421(b)(4)); and (5) he performed unsatisfactorily on parole in the past (rule 4.421(b)(5)). Moore further admitted to his three prior convictions, including one prior strike.

The trial court sentenced Moore to an aggravated term of three years in state prison on count 3, doubled to six years based on the prior strike. The court imposed but stayed a 16-month sentence on count 4 pursuant to section 654 and awarded Moore 730 days of custody credits. Moore timely appealed.

B. <u>Facts</u>

On March 19, 2022, police responded to a report of a shooting at a gas station in Oakland. Upon arriving at the station, officers found two individuals, T. Braswell and Rodney Davis, with gunshot wounds. Davis suffered a gunshot wound to the head and later died. Video surveillance from the gas station that day showed Moore's girlfriend, T. Foster, arguing with Braswell by the gas station attendant booth. Foster retrieved a gun from the car and Braswell reached into her fanny pack several times for her gun. Moore approached Foster, took the gun from her, and told her to get in the car. At some point, Davis came over and stood next to Braswell to buy drugs from her. Moore gestured at Foster to get in the car, and he and Braswell then started shooting at each other.

At trial, Moore testified that when he saw Braswell reach into her fanny pack, he believed that she was going to shoot him so he fired the gun he had taken from Foster. Braswell fired back, and Moore took cover behind a wall. As he was making his way back to his car, he saw Braswell reach for her gun on the ground and fired two more shots at her. He did not recall seeing Davis next to Braswell at this time. Moore saw Braswell fall to the

3

ground and drove off with Foster.

## II. DISCUSSION

Moore argues that he received ineffective assistance of counsel because his counsel failed to present mitigating evidence of his childhood trauma at sentencing. He contends that had this evidence been presented to the trial court, "it is reasonably probable that he would not have been sentenced to the aggravated, upper prison term." We agree that counsel should have presented this mitigating evidence but on this record, find no prejudice.

A. Relevant Procedural History

Prior to sentencing, Moore's counsel filed a memorandum that included a request for the trial court to dismiss Moore's prior strike under section 1385. (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).) Of relevance here, the memorandum stated that "[t]he circumstances that [Moore] was dealt in life . . . have led him to difficult decisions in life." It also included a letter from Moore's mentor, M. Zaugg. The letter highlighted that Moore grew up in "a dreadful environment" and that his "childhood home was what most people would call a crack house with burnt furniture and carpets" and "never-ending drug use, as thick as the fog." Moore's counsel also listed various factors in mitigation but did not include the factor of childhood trauma under rule 4.423(b)(3).

The probation officer's report detailed Moore's 15-year criminal history, including his prior convictions for robbery, assault with a deadly weapon, and burglary. Moore declined to discuss the subject offense with the probation officer. The report described Moore's childhood years as chaotic—his "parents struggled with drug addiction and frequent incarceration, leaving [him] and his siblings to be raised by their maternal grandparents." The report continued that it was "likely that [Moore's] criminal behavior can be

4

attributed to the adverse and traumatic events he experienced in his childhood." Nevertheless, the probation officer recommended that Moore be sentenced to the upper term of six years in state prison.

At sentencing, the trial court emphasized that it had "paid particular attention to [the] probation department's summary of Mr. Moore's background" and acknowledged that it was a factor it "can and should consider." After balancing "the particulars of Mr. Moore's background [and] his character" against his history of criminality, including his several prior felony convictions, the court denied the *Romero* motion and concluded that Moore fell squarely within the spirit of the Three Strikes Law.

In imposing the aggravated term on count 3, the trial court considered that Moore's prior convictions were numerous and of increasing seriousness (rule 4.421(b)(2)), that he served three prior prison terms (rule 4.421(b)(3)), that he was on parole when this crime was committed (rule 4.421(b)(4)), and that his prior performance on parole was unsatisfactory given his continued criminal activity (rule 4.421(b)(5)). Of the four mitigating factors set forth by Moore's counsel, the court only found one true— that Moore mistakenly believed that his conduct was lawful. (Rule 4.423(a)(7).)

B. Ineffective Assistance of Counsel

The standard of review for an ineffective assistance of counsel claim is well established. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) Prejudice requires a showing of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Id*. at p. 694.)  A defendant has the burden of proving these factors by a preponderance of the evidence. (*People v. Stratton* (1988) 205 Cal.App.3d 87, 93.)

In general, "[w]e presume 'counsel's conduct falls within the wide range of reasonable professional assistance' [citations], and accord great deference to counsel's tactical decisions.  [Citation.]  Because it is inappropriate for a reviewing court to speculate about the tactical bases for counsel's conduct at trial [citation], when the reasons for counsel's actions are not readily apparent in the record, we will not assume constitutionally inadequate representation and reverse a conviction unless the appellate record discloses ' "no conceivable tactical purposes" ' for counsel's act or omission." (*People v. Lewis* (2001) 25 Cal.4th 610, 674–675.)

1. *Performance*

Moore contends that there was no tactical reason for his counsel's failure to present childhood trauma as an additional mitigating factor at sentencing.  We agree.  Section 1170, subdivision (b)(6)(A) states in relevant part that "unless the [trial] court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if" childhood trauma "was a contributing factor in the commission of the offense."  Here, both the probation officer's report and Zaugg's letter discussed Moore's childhood trauma, and the probation officer concluded that Moore's history of criminality was attributable to his traumatic upbringing.  Defense counsel therefore had ample bases to argue this factor.

The People counter that defense counsel could have concluded that

6

requesting a lower term sentence under section 1170, subdivision (b)(6) would have been futile given Moore's conviction. We are unpersuaded. Defense counsel filed a *Romero* motion to dismiss his prior strike based on various mitigating factors and claimed that the "circumstances that [Moore] was dealt . . . have led him to difficult decisions in life." Counsel also attached Zaugg's letter which detailed Moore's difficult and traumatic upbringing. Clearly, counsel believed that Moore's childhood was a relevant mitigating factor that supported the *Romero* request. Additionally, the probation officer concluded that Moore's criminal behavior was likely due "to the adverse and traumatic events he experienced in his childhood." We cannot therefore conclude that defense counsel believed that requesting a lower term based on childhood trauma pursuant to section 1170, subdivision (b)(6) would have been futile. Accordingly, counsel's performance was deficient.

2. *Prejudice*

On this record, however, Moore has not shown that his counsel's performance resulted in any prejudice. As discussed above, both the probation officer's report and Zaugg's letter described in summary fashion Moore's difficult childhood, including his parents' drug addiction and frequent incarceration. At sentencing, the trial court highlighted that it had "paid *particular attention* to the probation department's summary of Moore's background" and acknowledged that his unfortunate upbringing may have impacted the decisions he later made in life. (Italics added.) Nevertheless, the court denied Moore's *Romero* motion after balancing his background against his "several prior felony convictions[,] including strikes, including prison commitments." In other words, the court concluded that it would not be "in furtherance of justice" to dismiss Moore's prior strike under section 1385, subdivision (a), despite his childhood trauma.

7

In light of this conclusion by the trial court, it is not reasonably probable that the court would have concluded that the aggravating circumstances were outweighed by the mitigating circumstance of Moore's childhood trauma, at least as described in this record. Indeed, the court was well aware of Moore's childhood trauma when it imposed the upper term. And based on Moore's numerous prior felony convictions and his parole status at the time of the subject offense, the court likely would have found that imposition of a lower term "would be contrary to the interests of justice" under section 1170, subdivision (b)(6).

### III.  DISPOSITION

The judgment is affirmed.

CHOU, J.

We concur.

JACKSON, P. J.
BURNS, J.